The next case for argument today is Crowther v. Carr, 23-8014. May I please have the floor? My name is Rex Mann, and I'm here on behalf of Appellants Rosen and Crothers, who brought civil constitutional claims against the appellees here for their overzealous actions as law enforcement officers and prosecutors in a small tight-knit community in Jackson Hole, Wyoming. The district court dismissed every claim on summary judgment, even some claims that weren't even raised that we'll discuss. And we asked this court to reverse the district court because, one, it stepped into the shoes as a fact finder by improperly weighing the evidence against the non-movement and also made other lead wearers, as I'll outline today in the briefing. So I want to give a brief answer to questions, obviously, but I first want to start by giving a brief, high-level overview of the facts. There's much more details in the briefing, but it really is quite an incredible case. Rosen was a 17-year-old high school boy at the time, and he was wrongfully accused of sexual assault by two former romantic partners. The cases were so weak that the prosecutors eventually dropped them. But not before, based on the actions of some of the appellees, his name was drugged through the mud in the press, he had to leave high school, be under house arrest for four months, he didn't get to graduate on time, he didn't get to go to the colleges he wanted to. In these cases, based on the actions by certain of the appellees, it should have been brought to begin with, but they're still impacting him to this day. At a high level, one of the cases related to MR had to be dropped when an exculpatory video came out that was provided by one of the eyewitnesses that the investigating officers decided not to interview, even though the prosecutors suggested they interview them. That person had a video that exonerated my client. As to IU, IU's phone had a hookup list on it which listed her partners and it described the encounter with Rosen as one consensual. Notably, Bomber had that for a couple months and didn't disclose it. It wasn't until the defense found it themselves and raised it that the prosecution finally had no choice but to drop that case as well. What else was on IU's phone was a chat or text message with someone who outlines a pretty disgusting behavior by the PE teacher at a local high school who had been sexually assaulting her, forcing her to do various sexual acts with him. In contrast to how they investigated Rosen, they immediately jumped on it and investigated, talked to IU and MR. They didn't do anything with the PE teacher. Do the claims, your client's claims, your class of one equal protection claims involving the PE teacher, do those claims against the peace officers travel together with the claims against the prosecutors? I guess I don't understand what you mean by travel together. It doesn't seem to me that the district court addressed this claim against the prosecutors. Is that correct? Yes, Your Honor. I think I understand what you're asking. There are different facts and issues. There were things the prosecutor was doing versus the officers. Of course, we didn't put all the facts. In fact, your complaint lumps them all together almost always. If you go through the complaint, you can't tell when you're talking about the prosecutors, when you're talking about the officers. I have a little trouble with your argument that the court couldn't dismiss on summary judgment all of the claims because if anyone's responsible for mingling together, it seems to me the complaint does. Your Honor, I agree there are certain times in the complaint where it does that. Certainly, in introductions and things like that, when you're speaking more high level. Even in the allegations, it often just says the defendants. Your Honor, I believe in the summary judgment briefing, we were very specific in the factual background. I believe even in the appellate briefing here, we were very specific as to who did what. Of course, complaints are sometimes made on information and belief. We knew there was coordination because we knew there were meetings between the prosecutors and defendants. Certainly, at a certain period of time, we thought more people were involved. Once we went through discovery of the case and we got depositions and were able to identify the specific facts, we did include that in our summary judgment briefing. I know that's a complaint they made, but I believe if you look at the briefs, we're pretty specific as to who did what in our factual section. The court certainly didn't have much of a problem. With each cause of action, it had a footnote that said, this is brought against this person, this person, this person. It wasn't the same people all the time. Well, the district court dismissed claims and said, I've dismissed as to this group of defendants and that takes out this group of defendants, too. And you object to that here on appeal. And our case law is pretty clear that in order for you to, you know, typically you give notice, but you have to have been prejudiced. And so you have to come forward and you have to tell us how the facts were different in a way that would have made your claims there survive when these claims failed. And none of your argument does that, even on appeal, arguing these claims. Your Honor, the struggle is we're here on a summary judgment motion, which it's the burden of the movement to explain why summary judgment should be granted. So it's really hard for us to guess as to why the prosecutor defendants would have said, we should have summary judgment should be granted if they don't explain those reasons. And thus, we don't really know what they would have argued. Now, as for prejudice, what we can say is we were very upfront with the district court about this. I think we mentioned on the first or second page of our briefing, it said that those, it wasn't raising those claims and so we're not providing any specific argument or evidence on that. And because we had time limits, there were a lot of claims. We actually had three parties at the time. So it would have prejudiced us to try to guess what they were arguing and provide evidence to argue that. Could you speak specifically in terms of the claims? Because I'm a little bit confused. So we're talking here about counts four and five that the district court said, I dismiss. Well, count four wasn't pled against the prosecutors, correct? That's right. Okay, so she gets rid of four and five on summary judgment, even though the prosecutors don't bring that motion on those claims, correct? As to the class of one claim against the prosecutors, that was just not addressed in the district court order. Do you agree? Yes. Okay. So back to the four and five, counts four and five. To satisfy your obligations under our case law to show prejudice, I would think you'd have to say getting rid of the peace officers doesn't, as a matter of law, get rid of the prosecutors. And I'm not sure you can say that here. Your Honor, I would say that because the court's analysis on counts four and five in the Fourth Amendment was a highly, it wasn't like there was some legal principle that barred our claims. It was a highly factual, specific analysis as to those officers. And the court spent a couple pages talking about what the officers did and what they didn't do, et cetera, and then said my analysis applies also to the prosecutor defendants. But we didn't have the opportunity to understand what the prosecutor defendants' issues were, what grounds they were even raising for summary judgment on that one. We would have to just presume that it was the same grounds as the officer defendants. But, of course, they have different obligations and duties, and prosecutors are certainly treated differently than officers. So that was the struggle, Your Honor. Well, on the due process, I mean, for me, it probably helps to break them out. That's right. But on your Fourth Amendment claim, with respect to Mr. Crothers, the ruling was that he wasn't seized. And, as I understand it, and that, therefore, you can't prevail on a Fourth Amendment due process claim. Your Honor, we're not challenging the court. We're saying that the prosecutor defendants didn't raise any issues as to Rosen. They did as to Crothers, so that wasn't an issue with that one, Your Honor. So I would agree with you there, except we're not saying that one was an issue. But since we're talking about that one. Yes, Your Honor. If I may. With respect to the malicious prosecution claim that Mr. Crothers is bringing, below you argued seizure not a requirement. Your Honor, it was complicated. Did you argue that seizure was not a requirement? I can't recall if we said it like that. The issue was they raised this Becker case, and what we were saying was that that Becker case was talking about seizures in the context prior to trial. We just said that didn't apply. We should have more artfully said that it still would have been a seizure if he was at trial, but our point was that their argument was irrelevant because they didn't point to any law saying that a seizure didn't occur when he went to trial. So you were arguing about the scope and implications of Becker. District Court rejected that argument. Yes, Your Honor. Now you're making a different argument. Well, Your Honor, the court rejected it because the court said that was no seizure. And I think our point is that the seizure that's talked about in those cases is pre-trial, and so the case law here is different when it comes to when he was at trial. But it doesn't seem that the argument—or maybe I'm misunderstanding your argument. It doesn't seem to me that the argument you're making to this court on seizure, that the quality of the prosecution itself having to stand trial constitutes seizure, you did not make that argument in the district court. Is that correct? Your Honor, I can't entirely agree with that. I agree that we make it differently, certainly, because the way it was brought was that Becker applies, there was no arrest, substantiating that there was no seizure. That was kind of the sequence of events. And what we said, well, no, Becker doesn't even apply, so you're wrong. And we didn't address whether a trial would be a seizure because we viewed their motion as being since there was no arrest, there was no seizure. And that's what we rebutted, Your Honor. So that's why it's argued a little differently. And then the court obviously analyzed the seizure element in a little more detail, and so we're trying to respond to that. Your Honor, if I may, I'd like to talk about Rosen's 14th Amendment claim for intentionally delaying the charge. There's some complicated facts there. Yeah, and again, you've got a prejudice requirement. On a due process claim based on prosecutorial delay, you have to show that they did it intentionally to gain an advantage and that you were prejudiced at trial. Every single case talks about being prejudiced at trial. Your client never went to trial. Your Honor, our client, well, the reason why our client didn't go to trial was because they dropped the case. Well, that may be, but you weren't prejudiced at trial. Your Honor, I'm not aware of the law saying you have to go to trial. If that's the case, that's the case. But the point of the prejudice, our prejudice argument in terms of due process was that he lost the ability and lost the confidentiality protections that would have been provided to him by juvenile court. Well, yeah, you've conflated different due process arguments altogether in your brief, and I had to kind of pull them apart. The prosecutorial delay is the one we've just talked about. And now you want to switch to a different one, which is, I'm not sure if you're arguing deprivation of a liberty interest or a property right or exactly. I think you referred to it as a property right. But you would have to show that he had an absolute right with no discretion to be tried in the juvenile court, which I don't see under the state law how you can get there. Your Honor, I think Your Honor should look at that. I'll refer Your Honor to the Hyde Park case, because what that case says is it's not that there's a property right because there's no discretion or that you're entitled to a particular result. There's a property right because you're entitled to the evaluation of a set of factors or a standard, and then really because of that, whether you win or lose. And I mean, I can quote from Hyde Park. Before you do, may I just ask you to clarify, is your argument that there is a property interest notwithstanding the discretion, is that a way that you are seeking to satisfy the actual prejudice component of your delayed prosecution argument? Or is that like a whole different argument? They're related. But certainly the prejudice has to do – the property right is the right to a ruling or a particular result or an analysis based on the determined set of factors, and the ruling may come from that. The prejudice relates to that, but because we weren't – because they delayed and charged him as an adult because the consequences were more severe as they admitted and other things that they did, we weren't able to gain the benefits of that property right. So the prejudice has to do with the loss of benefits from that property right. Your Honor, the last thing I'd like to note, because I think it's something I was looking at, is on Crothers' 14th Amendment right to fair trial claim, one thing I want to point out is all the cases that the district court and the appellees point to are in the context of a post-trial – generally, whether there was a right to a change in venue due to publicity. And there the court does it as a fact finder. And we believe that's really what the court did here is it substituted itself as a fact finder and applied a standard that's sort of beneficial to the state, which is a discretionary standard from the post-trial context. When we're in almost the opposite procedural posture, we're here on summary judgment and whether we can raise a duty of issue material fact. Well, hasn't the Supreme Court pretty much said if you get a split verdict, you're not going to be able to meet the standard for showing an unfair trial? Not in this context, Your Honor. That's in the post-trial context when you're given the district court, when you're under an abuse of discretion standard. And they say that that's something that can be considered when evaluating abuse of discretion. That's the opposite standard we're applying here, which is a standard of whether there's a duty of issue material fact. I see I'm out of time. Well, I'm going to ask to hold you there for one more minute, because why can't we throw this whole appeal out under Heck v. Humphreys? Your Honor, we aren't trying to, if I recall that, we aren't trying to relitigate the criminal cases, if that's how I recall that one. Well, if you win on your malicious prosecution case, you're going to set aside the conviction. Your 14th Amendment due process, you would set aside the conviction. Anything that would interfere with his criminal conviction is covered by Heck v. Humphreys, isn't it? No, it can't possibly interfere with his conviction here because he's already done his time, he's already been convicted, everything's in the past. That's not how Heck v. Humphreys works. Even if he served his time, you would be, if you won, saying that that conviction is invalid. Well, Your Honor, the only reason we aren't trying to set aside the conviction is because what we're complaining about is the sexual battery charge, which he's acquitted on. So it really wouldn't impact the criminal prosecution at all. Well, you can't do that. I mean, if the trial was unfair, the trial was unfair on every charge. You can't parse it out and say part of the trial was fair, but the rest of it was a zoo. Your Honor, we'd have to look more into that. I mean, that's something we can't focus on with the court. But that's all the time I have. I'm happy to answer any further questions. Thank you. Thank you for your time. Good morning, Your Honors. Excuse me. My name is Timothy Miller. I'm a senior assistant attorney general with the state of Wyoming, and I represent Sheriff Carr in his individual capacity, and deputies Bomber, Roundy, Platt, and Hondas in their individual capacities. With your permission, I want to yield the last three minutes to Mr. Bowers, who represents the prosecutors in this case, particularly since so many of the questions had to do with prosecutor defenses. All right. So we have two separate civil rights claims in this case by separate parties involved in entirely different incidents. And so you separate Rosen from Crothers. And I want to start with Rosen. There is this astonishing void in the record, and we just heard it. We just heard from counsel that Mr. Rosen was, quote, wrongly accused. What evidence in the record is there that he was wrongly accused? We don't have an affidavit from Mr. Rosen denying that he committed the sexual assault. We don't have deposition testimony from Mr. Rosen that he committed these sexual assaults. They argue in their Franks argument that Deputy Hodges recklessly disregarded the truth, and they don't tell us what the truth is. The Franks claim fails because Rosen does not identify, does not attempt to identify, in fact, rejects the necessity of identifying a false statement or material omission in Deputy Hodges' probable cause affidavit. Without that, Franks doesn't go anywhere. There are other failures, too, along the lines, but that's the most fundamental one. On the delay in charging, yes, it is not a delay that prejudiced Rosen at trial because he was not tried. Even if you go to the theory that they go to, which is that he was prejudiced because he couldn't transfer from adult court to juvenile court, understanding that he could be charged when he was in adult court when he was 17, their argument that he couldn't transfer is just wrong, and they know it's wrong because they're the ones who established it. They filed a motion for Rosen in another case for transfer to the district court, and the Wyoming Supreme Court affirmed that they could do that. There is no actual prejudice, and the court is absolutely right. Well, they could ask for it. They could request a transfer. They could request it, and that's a very good point. They did not have a right to a transfer. There were several discretionary factors, and the discretion is very broad. On the class of one clause, this argument is Rosen makes the argument, gosh, this PE teacher should have been investigated more thoroughly. So what? Rosen has to show that he should not have been charged because the PE teacher was not charged. Well, obviously their situations are not similar in all material respects. The alleged victim of the PE teacher didn't want to participate in the investigation, and that also provides a rational basis. You'd objectively not to charge the PE teacher. So those are the three Rosen claims. Are there questions about the Rosen claims? Doesn't appear so. All right. Thank you. Going on to the Crothers claims. The Crothers claims, at least for my clients, are even easier, and, Judge McHugh, you pointed out the problem. There is no evidence of individual participation by any of my clients in either of Mr. Crothers' claims. On the malicious prosecution claim, the only person who had any involvement is Deputy Roundy, and they point out Deputy Roundy did not charge Mr. Crothers with sexual battery, which is the basis of the malicious prosecution claim. The prosecutor added that charge, and they say it's because some plea negotiations fell through. All right. So Roundy isn't involved in Crothers' malicious prosecution claim. They don't. There isn't any evidence or even allegation that any of the other peace officers were involved. And then on your fair trial claim, again, they don't connect the dots. There isn't a whit of evidence that any of the peace officers were involved in this so-called zoo-like atmosphere. Maybe it was because a bunch of high school students were in the courtroom. I don't know. And it's undisputed that the peace officers had no contact with the media. Okay. Quickly. I mean, that dispenses with those claims from my clients. But, yes, despite their efforts, Crothers did not argue he was seized below. He argued he didn't have to be seized to proceed with the claim. And he forfeited because he did not allege plain error in his opening brief. And the plain error would be to argue that sitting in a trial or being compelled to attend a trial is a seizure for malicious prosecution purposes, because this court has ruled that it is not. And... Where have we ruled that? Are you relying on Becker? Lewis v. Roth, which is an attendance decision, I recognize. In Becker, it doesn't say attendance trial. It does say compelled. Being compelled to attend a trial is not a seizure. But in Lewis v. Roth, the plaintiffs have been forced to attend two trials, and the court is from the summary judgment. In a published decision? No. Not in a published decision. So if we reached that issue on the merits, we don't have settled law on it yet. Yes. Yes. So in conclusion, I would say that based on the indisputed facts, plaintiffs' appellants' claims failed as a matter of law, and so we ask that the summary judgment for the peace officers be affirmed. Thank you. Thank you. Thank you. Your Honor, my name is John Bowers. I represent the Aaron Weissman Clark Allen, the Teton County Prosecutor's Office, that may please the court. In the posture of this case, when I filed my motion for summary judgment, I believe that the strongest position that we had was Heck v. Humphreys, specifically with Mr. Crothers, and then absolute prosecutorial immunity, and then to a limited degree, if things didn't fall within their, perhaps, the administration of the prosecution's office, then qualified immunity. On the equal protection, in hindsight, I wish that I'd spent more time, but with page limitations, that was a decision I made. I would like to comment on that quickly, because if you look at the court's opinion, which I know that all of you have, the court emphasized that the difference between the P.E. teacher and Mr. Rosen was that you had two alleged victims that were willing to come forward, and with the P.E. teacher, you were not. And it doesn't matter if it's a claim against the law enforcement officers or against the prosecutors. There's no prejudice to the appellants, because it's the same analysis, and it was discussed. On the, if I may, with Heck v. Humphreys, I think that's very, very clear, and I think if you look at the posture of this case, this was an effort to retry the criminal case. It was a situation where if the matter wasn't, if summary judgment wasn't granted, that it could and still could affect the outcome of Mr. Crothers and his conviction. It would call into question the unlawfulness of the conviction or sentence, and to me, that is what Heck v. Humphreys stands for, and that is very clear. Is there a way to separate out the sexual assault claim from the claims that Mr. Crothers was actually convicted of? In the case law that I reviewed, Your Honor, no, because I think that, as you pointed out, the trial was completely unfair on all counts, or it wasn't. In fact, I don't believe I've seen a case where they've piecemealed it out. They've just looked at it and said, okay, unless the tribunal has came back and questioned the conviction or found that it was unlawful and removed that, that you cannot make a civil claim, and there's no piecemeal that goes on, Your Honor. I hope I answered that for you. With the prosecutorial absolute immunity, this court can affirm the decision in favor of the prosecutors on any basis. As I indicated, we argued that very heavily. If you look at everything in this case, every claim, whether it was publicity, whether it was the decision, the charge, whether it was, in some degree, the administration over exculpatory material, whether it was the trial, the preparation for the trial, all of that under the functional approach falls within the absolute immunity, prosecutorial immunity. So if I didn't argue it appropriately, the equal protection, I would ask the court to look at the absolute immunity, Heck versus Humphrey, and to a degree, if necessary, then qualified immunity, because in that situation, these are all government employees. Their conduct, I think at a minimum, when you look at the district court's opinion, their conduct did not violate any constitution or statutory right of the appellants. And in some regard, with some of their claims, even if they had reached that first prong, I'm not sure how they could get to the second prong. So with that, I guess I'll just, it's green, so I guess that's good if you have any questions for me. Good. Thank you. Thank you so much for your time today. Good morning, Your Honors. My name is Tom Thompson, and I represent Sheriff Matt Carr in his official capacity. The two counts that I'll address this morning are count one, which was an alleged violation of constitutional rights for customs policies and practices against Teton County, and count two being violation of constitutional rights against Teton County and Carr for failure to train and supervise. The district court spent approximately three pages addressing the fact that if there was no constitutional harm, there can be no municipal liability. That law is clear in the Tenth Circuit. And I would urge the court, regardless of how it may decide in regards to the individual claims against the sheriff's deputies, that the court still, from review of the record in this case, can find that there was no custom policy or practice, which has yet to be identified by the appellant in this case, that caused the constitutional harm, that was enacted with deliberate indifference. There is absolutely nothing in the record to indicate that that exists. And in regards to the failure to train claim, the appellant likewise has presented no evidence in regards to that issue, that Teton County Sheriff's deputies were not properly trained. The expert that the appellees presented in this case, Dr. John Peters, provided through his affidavit that the officers were, the deputies were in fact trained. They were certified peace officers in the state of Wyoming. Their training records, which were part of that affidavit, showed that they were certified through the Wyoming Law Enforcement Academy and that they were trained once they were hired by the Teton County Sheriff's Office. So again, both in regards to the issues that apply to the official capacity defendant in this case, or Hallie Sheriff Matt Carr, there is simply no evidence of an unconstitutional policy, practice, or procedure, or any evidence that these deputies were not properly trained. And for those reasons, I would ask the court to affirm in regards to the claims, Mona Health claims concerning municipal liability. Thank you. Thank you. Do we have rebuttal? Okay. We'll take this matter under advisement.